PEOPLE ex rel. ROSS v. DOOLING et al., Election Com'rs.

(Supreme Court, Appellate Division, Second Department. April 23, 1909.)

1. TRIAL (§ 177*)—DIRECTING VERDICT—REQUEST BY BOTH PARTIES.
 The Trial Term may direct a verdict; a direction being requested by both parties.
 [Ed. Note.—For other cases, see Trial, Cent. Dig. § 400; Dec. Dig. § 177.*]

2. MANDAMUS (§ 169*)—DISMISSAL OF ALTERNATIVE WRIT BY TRIAL TERM.
 The Trial Term may not dismiss an alternative writ of mandamus; the practice on trial of such a writ being analogous to the equity procedure of framing issues, so that the final disposition is with the Special Term.
 [Ed. Note.—For other cases, see Mandamus, Cent. Dig. § 375; Dec. Dig. § 169.*]

3. TRIAL (§ 178*)—SETTING ASIDE DIRECTED VERDICT.
 A court, though directing a verdict, may set it aside.
 [Ed. Note.—For other cases, see Trial, Cent. Dig. § 401; Dec. Dig. § 178.*]

4. NEW TRIAL (§ 7*)—SETTING ASIDE VERDICT—GRANTING NEW TRIAL.
 The court, on setting aside a verdict, should grant a new trial, if the case presents a question for the jury.
 [Ed. Note.—For other cases, see New Trial, Cent. Dig. § 18; Dec. Dig. § 7.*]

5. MUNICIPAL CORPORATIONS (§ 218*)—EMPLOYÉS—REMOVAL—WAIVER OF PROCEDURE—NOTICE.
 A clerk, the power to remove whom was in a city board composed of four members, did not have notice of its contemplated removal of him, within the rule that, if he had such notice and it was ignorant of his status as a veteran, entitling him, under Civil Service Law (Laws 1900, p. 420, c. 195) § 21, to have his removal made only on charges and a hearing, he would waive his right to such procedure by not enlightening it, where the president of the board merely sought to obtain his resignation, having at the time avowedly no authority from the board even to ask for a resignation, and not pretending that it contemplated a removal as an alternative, and the reasons for resignation being stated to be political, and this,

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

even if the president did tell him that, if he did not resign, he would be removed.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 594, 595; Dec. Dig. § 218.*]

6. MUNICIPAL CORPORATIONS (§ 218*) — EMPLOYÉS—REMOVAL—WAIVER OF PROCEDURE.

While the question of waiver by a city employé of his right to have his removal made only on charges and a hearing may be disposed of as a question of law, yet, when different inferences are permissible, the question is one of fact.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 594; Dec. Dig. § 218.*]

Appeal from Special Term, Richmond County.

Mandamus, on the relation of Alexander M. Ross, against John T. Dooling and others, Commissioners, composing the Board of Elections of the City of New York. From a final order of the Special Term dismissing an alternative writ, and from an order of the Trial Term (61 Misc. Rep. 358, 113 N. Y. Supp. 246) setting aside a verdict and dismissing writ, relator appeals. Order of Special Term reversed, and order of Trial Term modified to provide for new trial.

Argued before WOODWARD, JENKS, GAYNOR, BURR, and RICH, JJ.

George M. Pinney, Jr. (Warren C. Van Slyke, on the brief), for appellant.

Theodore Connoly (Royal E. T. Riggs, on the brief), for respondents.

JENKS, J. The relator was removed from his chief clerkship in a borough bureau of the board of elections of the city of New York. He applied for a writ of mandamus. An alternative writ was issued and tried before a jury. Each side moved for a direction of a verdict. The court submitted one question to the jury:

"Did the relator waive his right to charges and a hearing under section 21 of the civil service law at the time of his removal from the position of chief clerk of Richmond borough office of the board of elections of the city of New York?"

This was answered in the negative. In addition, and by direction of the court, the jury returned a verdict that the relator was a citizen of the United States and a resident of the county of Richmond, and on the 29th day of February, 1908, was a veteran volunteer fireman of and in a volunteer fire department of that county; that he was removed and dismissed from his position on the 29th day of February without a hearing upon due notice upon stated charges, and without being served with or receiving any charges of misconduct or incompetency; that on the 20th day of April, 1908, he served on or caused to be delivered to the respondents a formal notice and protest against his dismissal and removal, on the ground that he was a veteran volunteer fireman, and so could not be removed by the proceedings theretofore had, in that it was a direct violation of and was prohibited by section 21 of the civil service law of the state of New York (Laws 1900, p. 420, c. 195).

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The court thereupon directed a verdict for the relator, but later, and on motion of the defendants, it set aside the verdict of the jury, in that the facts as matter of law constituted a waiver of relator's rights as a veteran volunteer fireman under section 21 of the civil service law, and dismissed the writ as a matter of law, and not in the exercise of discretion. The relator appealed from this order. Thereafter the defendants moved for a final order of dismissal at the Special Term, and that Special Term referred the motion to the Special Term held by the learned judge who had presided at the Trial Term. The Special Term made an order dismissing the alternative writ on the merits as a matter of law. This order contains a recital of the said disposition of the case at the Trial Term. The relator also appeals from that order.

The court at Trial Term had the right to direct a verdict, inasmuch as a direction was requested by both parties. People ex rel. Gleason v. Scannell, 172 N. Y. 316, 65 N. E. 165. But I think that the court at Trial Term had no right to make an order dismissing the writ, inasmuch as the practice upon the trial of an alternative writ is analogous to the equity procedure of framing issues, and hence the final disposition is with the Special Term. People ex rel. Bean v. Clausen, 74 App. Div. 217, 77 N. Y. Supp. 521; People ex rel. Geraci v. Association, 123 App. Div. 277, 107 N. Y. Supp. 1101. Although the learned court originally directed a verdict in favor of the relator, it did not thereby shear itself of power to set aside the verdict; but, if the case presented a question for the jury, the court, upon setting aside the verdict, should have granted a new trial.

Aside from the question of practice, I think that the question of waiver in this case was for the jury. As one may waive a statutory right (Sentenis v. Ladew, 140 N. Y. 463, 35 N. E. 650, 37 Am. St. Rep. 569), the doctrine of waiver is applied to an appointee or employé in the public service who is protected from removal by a statute of prescribed procedure. Certainly, if such an one has notice of a contemplated removal in disregard of the statute, and his status under the statute has not been brought to the attention of the removing power, and is not then or thereafter brought to its attention before the action of removal, then the doctrine of waiver will apply. And so this doctrine may well be held to apply when the appointee or employé becomes aware of an intent of removal by an ignorant removing power, and yet fails thus to enlighten that power. The cases of People ex rel. Robesch v. President, 190 N. Y. 497, 83 N. E. 597, and People ex rel. McDonald v. Clausen, 50 App. Div. 286, 63 N. Y. Supp. 993, chiefly relied upon in the opinion of the court at Trial Term, did not directly involve a question of waiver. In the former case the relator had notice and attended at a hearing upon charges of negligence, and neither then nor before informed the removing power of his statutory protection, so that case turned upon the sufficiency of notice of the statutory protection as given by a certain certificate theretofore filed in the department. In the latter case the respondent was vested with the power of removal, and the question was whether he received notice of the veteranship of the relator. The court held that a mere incidental remark to a park commissioner, many years before he was in office, in re-

lation to the fact that the relator had been in the army, was not sufficient to bring home to such person as park commissioner notice that the relator was a veteran honorably discharged from the service.

In the Robesch Case, however, the court, per Willard Bartlett, J., said that there was a well-established rule that, if the appointee or employé become aware of the intention of his superior to take steps to remove him, it is incumbent upon such an one to make known to his superior the fact that he claims to be a veteran soldier, sailor, or fireman if he desires to avail himself of it, unless his status has been already brought to the knowledge of the superior officer vested with the power of removal. In the case at bar the learned court applied this rule to the feature of waiver, and decided that as matter of law the relator had waived his statutory protection. The correctness of that conclusion must be tested by the single interview held between the relator and the president of the board of elections; for, although the latter testifies that there were two interviews, the relator positively asserts that there was but one. The relator testifies that he called at the private office of the president of the board, and said to the individual who was then president of the board that he understood, from the latter's private secretary, that he desired relator's resignation. The answer was:

"Yes; have you got it with you?"

The reply was:

"No, sir; I have not, and I don't intend to resign."

The relator then asked if the board made the request, or "if there was any reason why he should demand my resignation."

"As far as the board is concerned, that has nothing to do with it. This is a matter between us, you understand, Mr. Ross. There have been changes in the leadership down in your borough, and in politics we must expect this kind of thing."

The relator answered that he had been 10 years in the department and did not expect this kind of thing, that he would not resign, and that "if he desired me to be removed it would have to be on written charges and a hearing before the board." The answer was:

"You had better think this matter over and let me have your resignation."

The reply was:

"I will not resign, and cannot be removed except on charges. My record is clear."

The rejoinder was:

"All right; you are the doctor."

The relator, on cross-examination, also testifies that the president "may have said that if I did not resign I would be removed, and I said: 'You cannot remove me, except on charges and a hearing before the board.'" The president testifies:

"No one suggested to me the removal of Mr. Ross before February 29, 1908. His removal was out of my own head. I did not make any charge of any kind against him. The record shows that I did not. * * * No one suggested to me before February, 1908, that I should ask Mr. Ross to resign."

I think it could not be said that there was such waiver as matter of law. "The superior officer" of the relator, vested with the power of removal, was the board of elections, composed of four members. Section 11, subd. 2h, c. 909, of the Laws of 1896, as amended by Laws 1901, p. 243, c. 95. The jury could have found that only the individual who was president of the board sought to obtain the resignation of the relator. At that time he avowedly had no authority from the board even to ask for a resignation. He did not pretend that the board contemplated a removal as the alternative. He did not assert that there was any ground of removal. On the contrary, he gave as reasons for resignation matters which were entirely extraneous to any shortcomings of the relator. The relator testifies that the president of the board expressly excluded the board itself, saying that it had nothing to do with the case. Incident to the individual was his potentiality as an official. Even if that individual did say that if the relator would not resign he would be removed, it could be inferred that the relator might understand such utterance but as the expression of intention to persuade the board to remove him. But, even so, that was far from the expressed intention of the superior officer to proceed to a removal. Moreover, the relator did not stand mute. He asserted that he would not resign, and that he could not be removed, except upon written charges and a hearing before the board. This was an explicit statement of his rights. True, he did not specify that his protection was by virtue of his status as a veteran fireman, nor did he cite the statute; but we are now considering the evidence of a waiver, not of the sufficiency of a notice. Although the question of waiver may be disposed of as a matter of law (Ocumpaugh v. Engel, 121 App. Div. 9, 105 N. Y. Supp. 510), yet, when different inferences are permissible, the question is one of fact (Sheehan v. Board of Education, 120 App. Div. 557, 104 N. Y. Supp. 1002; Fox v. Harding, 7 Cush. [Mass.] 516–520).

I advise that the order of the Special Term be reversed, and the order of the Trial Term be modified, so as to provide for a new trial, and, as so modified, it be affirmed, all without costs. All concur.